FILED

2014 Oct-23  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY K. BLAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:13-cv-01799-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

## I.     Introduction

The plaintiff, Tammy K. Blake, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Blake timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Blake was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well as training to be a licensed practical nurse. (Tr. at 41.) Her past work experience is employment as a licensed practical nurse. (*Id.* at 182.) Ms. Blake claims that she became disabled

on April 1, 2009, due to hearing restrictions, back pain, arthritis, and endometriosis. (*Id.* at 161-62.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be

found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Blake meets the nondisability requirements for a period of disability and DIB and was insured through March 31, 2010. (Tr. at 33.) He further determined that Ms. Blake has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Ms. Blake's history of endometriosis with heavy menstrual cycle and obesity are considered "severe impairments" based on the requirements set

forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 35.) The ALJ did not find Ms. Blake's allegations regarding the intensity, persistence, and limiting effects of her symptoms to be totally credible, and he determined that she has the RFC to perform light work; she should avoid concentrated exposure to extremes of cold, heat, or loud noises; she should not work with hazardous machinery or from unprotected heights; she can do occasional stooping, kneeling, crouching, crawling, and climbing of stairs, but cannot climb ladders, ropes, or scaffolds. (*Id.* at 35, 38.)

According to the ALJ, Ms. Blake is unable to perform any of her past relevant work, she is a "younger individual" as that term is defined by the regulations, she has a high school education, and is able to communicate in English. (*Id.* at 41.) He determined that Plaintiff has "some skills that fall within the parameters of work at lower levels of exertion," but that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that though Ms. Blake has the RFC to perform light work, her "ability to perform all or substantially all of the requirements

of this level of work has been impeded by additional limitations." (*Id.* at 42.) Accordingly, the ALJ procured the testimony of a vocational expert ("VE") to assist in his determination of whether jobs exist in the national economy for an individual with Ms. Blake's age, education, work experience, and RFC. (*Id.* at 42.) Based on the VE's testimony, the ALJ concluded that Ms. Blake "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as health care support worker, which is light and unskilled; medical office helper, which is light and semi-skilled; file clerk, which is light and semi-skilled; and medical receptionist, which is light and semi-skilled.  (*Id.* at 43.) The ALJ concluded his findings by stating Ms. Blake "has not been under a disability" through the date of his decision. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for " despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Blake alleges that the ALJ's decision should be reversed and remanded for

two reasons. She claims that the ALJ failed to give adequate weight to her treating physician's opinion. (Doc. 9 at Page 3.) Also, she claims that the ALJ limited her to only unskilled jobs but then posed an incorrect hypothetical to the VE that did not limit her to only unskilled jobs. (*Id.*)

A.    Treating Physician's Diagnoses

Ms. Blake contends that the ALJ did not give adequate weight to the opinion of her treating osteopathic physician, Dr. Kitturah Klaiss. (Doc. 9 at Page 13.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Klaiss, Ms. Blake's treating physician, saw Ms. Blake on 15 occasions between April 2008 and November 2011. (Tr. at 219-30, 254-66, 270-76, 277-80.)

During this period, Dr. Klaiss completed two Pain Questionnaires ("PQs") and Physical Capacities Evaluations ("PCEs")—one each on September 27, 2010, and November 23, 2011. (*Id.* at 268-69, 282-83.) These evaluations provided an "estimate" of "the degree of pain that is present in particular instances and an evaluation of Ms. Blake's ability to do work-related physical activities." (*Id.* at 268-69, 282-83.)

In the 2010 PQ and PCE, Dr. Klaiss noted that Ms. Blake had pain extensive enough to be "distracting" and that "some limitations may be present but not to such a degree as to create serious problems in most instances." (*Id.* at 268.) Based on these observations, he recommended various limitations for Ms. Blake: a lifting limitation of ten pounds occasionally to five pounds frequently, a three-hour limitation on sitting, a two-hour limitation on standing or walking, and an expectation of three work absences per month. (*Id.* at 269.) In the 2011 PQ and PCE, Dr. Klaiss noted the same pain observations and recommended the same lifting restrictions and work absence expectation. (*Id.* at 282-83.) However, at that time he recommended a four-hour sitting restriction, a two-hour standing or walking restriction, and various restrictions on other activities, the strictest restriction being that Ms. Blake could "rarely" make bending or stooping movements. (*Id.* at 283.)

The ALJ gave no weight to these questionnaires and evaluations. (*Id.* at 40.) However, the ALJ gave "[g]reater weight" to Dr. Klaiss' treatment notes, clinical findings, and diagnostic tests created during the 15 examination dates. (*Id.*)

As is mandated, the ALJ specifically identified multiple reasons why he gave no weight to Dr. Klaiss' PQs and PCEs. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). First, he found the conclusions lacked support in the record. (Tr. at 40.) The ALJ found that "most orthopedic examinations" of Ms. Blake were "essentially unremarkable," "clinical examinations all indicate 5/5 motor strength with minimal musculoskeletal findings," the only x-ray in the treating records "noted a 'normal bony thoracic' spine," and consultative x-rays "indicated no physical abnormalities in the claimant's hips and spine." (*Id.* at 39-40, 234, 241, 252, 289.) Thus, the ALJ found no underlying "abnormality that could reasonably support the presence of chronic moderately severe pain or the functional limitations opined by Dr. Klaiss." (*Id.* at 39.)

Second, the ALJ noted that Dr. Klaiss's opinion regarding Ms. Blake's limitations was concededly based on her subjective complaints because "there is no diagnostic testing within the evidence from which to base these conclusions." (*Id.* at 40.) To be sure, Dr. Klaiss did examine Ms. Blake on many occasions. However, there

are "no supporting clinical, radiological, diagnostic, or laboratory findings" contained in these multiple examination reports that support the work limitations Dr. Klaiss eventually concluded Ms. Blake needed. (*Id.* at 39.) Instead, Dr. Klaiss apparently based his findings only on Ms. Blake's continued subjective complaints of back pain. (*See id.* at 220, 226, 230, 255, 257, 273, 275, 279.) Indeed, the only two reasons Dr. Klaiss provided regarding the basis for his proffered work restrictions were "pain and decreased range of motion in back." (*Id.* at 283.)

Finally, the ALJ noted that Dr. Klaiss's own treating records simply do not support his conclusions in the PQs and PCEs. (*Id.* at 40.) During Dr. Klaiss's September 20, 2010 evaluation of Ms. Blake—seven days before the doctor's first questionnaire and evaluation—she reported "increased back pain." (*Id.* at 275.) Dr. Klaiss's records note that Ms. Blake sounded "wishy-washy" on following his exercise recommendations and was using her back pain medication for tooth pain. (*Id.* at 275-76.) However, during Dr. Klaiss's November 23, 2010 evaluation, he noted that Ms. Blake had been performing his recommended exercises and had "notice[d] a difference." (*Id.* at 273.) When Dr. Klaiss next evaluated Ms. Blake on February 2, 2011, Ms. Blake apparently did not complain of back pain. (*Id.* at 272.) During Ms. Blake's August 29, 2011 evaluation, Dr. Klaiss noted that she reported "some low

back pain." (*Id.* at 279.) At Ms. Blake's November 22, 2011 evaluation, she described the pain as "persistent." (*Id.* at 278.) Despite the apparent change—if not improvement—in Ms. Blake's report of back pain, Dr. Klaiss' November 23, 2011 questionnaire and evaluation is almost exactly the same as the 2010 version. (*See id.* at 268-69, 282-83.) This almost exact consistency—in spite of seemingly changing circumstances—bolsters the ALJ's conclusion that Dr. Klaiss's findings do not support the observations on his PQs and PCEs.

Dr. Klaiss's PQs and PCEs were not accompanied by supporting clinical findings from his own records or other examinations in the record and, being based primarily on Ms. Blake's subjective complaints, were conclusory. Thus, the ALJ had good cause to discount these opinions. *See Edwards*, 937 F.2d at 583.

B.    The ALJ's Hypothetical to the VE

Ms. Blake also contends that the ALJ failed to fulfill his burden of proving that there were jobs that she can perform existing in significant numbers in the national economy. (Doc. 9 at Page 4.) This failure, she argues, was due to the ALJ's omission of an "unskilled work" limitation in the hypothetical question he posed to the VE. (*Id.* at 7.) According to Ms. Blake, the ALJ's RFC determination limited her to only unskilled jobs at the light level, so it was error for him to pose a hypothetical to the VE

that did not contain the "unskilled" limitation. (*Id.*)

As previously noted, when the ALJ finds that the claimant is unable to perform any past relevant work, he proceeds to the final step of the evaluation process to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can work in other jobs that exist in the national economy. *Wilson*, 284 F.3d at 1227. When a claimant has nonexertional impairments, the ALJ must introduce independent evidence, preferably through a VE's testimony, of the existence of jobs in the national economy that the claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). Aside from exertional levels of work (such as "sedentary," "light," or "medium"), the ALJ must also determine what level of skill the claimant achieved in his past relevant work and what skills are transferable to other jobs available in the national economy. *See* 20 C.F.R. § 416.968. A VE's testimony will only constitute substantial evidence if the ALJ poses a hypothetical question that comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

Here, the ALJ, aided by testimony from the VE, found that Ms. Blake is unable to perform any of her past relevant work. (Tr. at 41, 75-76.) Thus, the ALJ proceeded to determine whether there exist jobs in the national economy that Ms. Blake could

perform. (*Id.* at 41, 76.) At the hearing, he posed the following hypothetical question

to the VE:

> Let's assume that I were to conclude that a hypothetical individual could
> perform work at the light exertional level, with the following
> environmental limitations: such an individual should avoid concentrated
> exposure to extremes of heat and cold, in this particular instance, loud
> noises, as well; there'd be no working with hazardous machinery and no
> working from unprotected heights. . . . The following postural limitations
> might be appropriate: occasional climbing of stairs and ramps, stooping,
> kneeling, crouching, and crawling; there would be no climbing of ropes,
> ladders, or scaffolds; there are no mental limitations—or, excuse me, no
> mental impairments alleged or documented in this case . . . .

(*Id.* at 75.)  The ALJ never mentioned an unskilled work limitation to the VE.  Then

in his final RFC assessment, the ALJ never made a determination that Ms. Blake was

only able to perform unskilled work.  To the contrary, the VE testified, and the ALJ

found, that "some skills" would transfer from Ms. Blake's previous work as a licensed

practical nurse, which is classified as skilled work. (*Id.* at 41, 74.) Specifically, based

on the VE's testimony, the ALJ found that Ms. Blake "does have some skills that fall

within the parameters of work at lower levels of exertion" such as record keeping,

scheduling, or medical transcription. (*Id.* at 41, 74, 77.) The record supports the ALJ's

finding that Ms. Blake is not limited to unskilled because, in addition to her previously

working in a skilled position, Ms. Blake has a high school education, has completed

one year of college, and she did not allege any mental impairments. (*Id.* at 34, 41, 54,

162-64, 182-85.)   Based on Ms. Blake's educational background, lack of mental impairment, and existence of transferable skills, the VE testified that Ms. Blake would be able to perform the requirements for occupations such as health care support worker, medical office helper, file clerk, and medical receptionist. (*Id.* at 76-78.) These positions are classified as unskilled or semi-skilled and they vary in exertion levels. (*Id.*)  In light of Ms. Blake's transferrable skills, education, and lack of mental impairment, the ALJ was not required to limit his hypothetical question to the VE to unskilled work only. *See Zimmer v. Comm'r of Soc. Sec.*, 211 F. App'x 819, 821 (11th Cir. 2006).

Given the foregoing, Ms. Blake's argument that the ALJ specifically found that she should be limited to unskilled work lacks merit. Ms. Blake apparently relies on two statements in the ALJ's decision in making this argument.  First, the ALJ stated at one point in the opinion that "[t]he decision to limit the claimant to light, unskilled work, was reached only by giving the claimant great benefit of doubt." (Tr. at 40.) This conclusory statement is the first time that skills are at all mentioned in this section of the ALJ's decision.  Indeed, this statement appears under the ALJ's RFC determination, in which he finds that Ms. Blake can perform "light work" and should avoid particular physical conditions.  Due to the fact that this statement about

"unskilled" work is not supported by any findings or explanations in this section, this Court agrees with the Commissioner that the ALJ's reference to unskilled work appears to be a scrivener's error. The ALJ mistakenly including the word "unskilled" in his discussion is a harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding a harmless error when the ALJ "presumably misspoke" about the claimant's age).

The second statement that Ms. Blake relies on occurred when the ALJ noted in his decision that he used the VE's testimony, in part, "[t]o determine the extent to which [Ms. Blake's additional] limitations erode the unskilled light occupational base." (Tr. at 42.) However, in that same section, the ALJ goes on to note the various jobs available to Ms. Blake about which the VE testified. (*Id.*) As noted, some of these jobs were classified as unskilled and some semi-skilled. (*Id.*) If the ALJ had actually made a finding that Ms. Blake should be limited to unskilled work only, he would have disregarded the VE's testimony regarding semi-skilled work. The fact that the ALJ considered both unskilled and semi-skilled jobs in his analysis leads to the conclusion that he never made a finding that Ms. Blake could perform only unskilled work. This erroneous inclusion of the word "unskilled" in this section is also a harmless error. *See Diorio*, 721 F.2d at 728.

Page 16 of 18

Moreover, even if this Court were to agree with Ms. Blake that the ALJ *did* limit her to unskilled work, his determination of the number of jobs available to her in the national economy that are light or sedentary *and unskilled* is still "significant," as required by the regulations. Even disregarding all semi-skilled jobs (those with an SPV of at least 3) about which the VE testified and that the ALJ found Ms. Blake could perform, the ALJ still found that there exist—at the unskilled level—75,000 jobs nationally that Ms. Blake could perform. (Tr. at 42.) The ALJ could have found these job numbers alone to be "significant in the national economy." *See Allen*, 816 F.2d at 602; *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (upholding the ALJ's finding that 840 jobs constituted a significant number in the national economy). Accordingly, a remand to correct this harmless error would be unwarranted; it would amount to "an empty exercise," as the result of the ALJ's decision would not change. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981).

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Blake's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>23rd</u> day of <u>October 2014</u>.

                                          L. Scott Coogler
                        United States District Judge

[160704]